FREDERICK ANDERSON, Appellant, v. K. A. LEE et al., Appellees.

**HIGHWAYS:** Condemnation for Private Way—Existing Inadequate Way. An owner of land who *has* an inadequate and insufficient private way to his land may condemn an adequate and sufficient way, and it is no defense to the exercise of such right that a way other than the one sought to be condemned, might be bought from another party. So held where the existing way was only 10 feet wide, and passed over extremes of high and low lands.

*Appeal from Winneshiek District Court.*—W. J. SPRINGER, Judge.

APRIL 6, 1921.

ACTION in equity to enjoin the condemnation of an easement or right of way from land owned by the defendant to a public road. There was a decree denying the relief asked, and plaintiff appeals. The facts are sufficiently stated in the opinion.—*Affirmed.*

*William S. Hart,* for appellant.

*C. N. Houck,* for appellees.

WEAVER, J.—In the year 1892, one Ole O. Moe was the owner of the northwest quarter of the southeast quarter of Section 33, Township 97, Range 7 west of the 5th P. M. In addition to this tract, Moe also owned the south half of the northwest quarter of said section. The two described tracts, it will be seen, have a common corner at the center of the section. In the year mentioned, Moe sold and conveyed the first-described 40-

acre tract to the defendant Lee, who is still the owner and occupant thereof. At that time, there was no public road or highway affording ingress to or egress from said 40 acres, but the same deed conveyed to said defendant a strip of land 10 feet in width, extending from the common corner at the center of the section a distance of 80 rods north, along the east side of the land retained by Moe.

Soon after these conveyances to Lee, Moe disposed of the remainder of his land in that section, and the title to the south half of the northwest quarter is now held by one Monson. About the same period, the plaintiff, Anderson, acquired the ownership of the north half of the southwest quarter of said Section 33, lying immediately south of the Monson tract. Except as the situation is affected by the ownership of the 10-foot strip, Lee has no exit from his farm to a highway, other than such as he may have by the consent or sufferance of others by whose farms he is surrounded. For alleged reasons hereinafter mentioned, he has never utilized the 10-foot strip as a road, and the same has remained inclosed in common with the land of Monson, and Lee has usually found an outlet by following a path or way through several gates in a northwesterly course across the Monson land to a public road on the west side of the section. More recently, Monson withdrew his consent to such use of this way, and thereupon, appellee, invoking the provisions of Code Sections 2028 and 2029, began proceedings to condemn a right of way. Briefly stated, the statute referred to provides that the owner of land not having a public or private way thereto, and not being able to obtain one by agreement with the owner of the land necessary to be taken for that purpose, may make application to the sheriff of the county for the appointment of a sheriff's jury of six disinterested freeholders, who shall assess the damage which such landowner will sustain by such condemnation, and report such finding to the sheriff, and, if the applicant for such way shall, before entering upon such real estate for the purpose of constructing such way, pay to the sheriff for the use of the owner the damages so assessed, the road may be at once constructed and maintained.

The road which Lee sought to condemn is a strip 33 feet in width, across the north side of the Anderson land and im-

mediately south of the Monson land, and extends from the northwest corner of the Lee farm directly west to the highway on the west side of the section. Acting upon Lee's application, the sheriff did summon a jury, which, after written notice to the plaintiff herein, viewed the premises and assessed the damages he would sustain by reason of the condemnation at $210, which sum appellee paid to the sheriff for plaintiff's use. No appeal appears to have been taken from this assessment. Thereafter, the plaintiff instituted this action in equity, alleging that the condemnation proceedings were had without authority or jurisdiction to condemn or establish the said road, and asking that the same be declared void and that the appellee be perpetually enjoined from taking possession of or entering upon said land. The defendant relies upon the regularity and validity of the condemnation. On trial of the issues joined, the court found for the defendant, dismissed the plaintiff's petition, and dissolved the temporary injunction which had been granted pending the litigation.

I. The first, and indeed principal, ground on which appellant asks a reversal of the decree below is based upon the admitted fact that appellee, in purchasing his farm from Moe, also purchased the strip 10 feet wide from the northwest corner of the farm north to the angle of a highway extending north and east therefrom; and that the acquirement of this strip precludes the condemnation of any other road or right of way. The proposition that the owner of land already having a public or private access to a road may not have another by condemnation over the land of his neighbor cannot be doubted; but, like all general rules, it must be given reasonable construction and application. The right of a farm owner to condemn a way to and from his premises implies the right to have a way which is reasonably sufficient for that purpose. This is clearly recognized in our recent case of *Strawberry Pt. Dist. Fair Soc. v. Ball,* 189 Iowa 605, on which appellant largely relies, as well as in all our applicable precedents. Nor do we understand the appellee to deny the rule as here defined, but his contention is that, owing to the narrowness of the 10-foot strip and the natural obstructions and difficulties to be there overcome or avoided, it is not such a reasonably adequate or reasonably sufficient way as will defeat

his right to the condemnation. On this question of fact there is some conflict in testimony. The width of this strip is, of course, conceded, and the testimony of the plaintiff and quite a large number of his witnesses tends to show that, in part, the strip lies in a slough, and is intersected by a living stream and large ditch; that the lower area is subject to overflow; that there are one or two steep and stony hills to be surmounted; and that, as a whole, it is not a feasible or practicable outlet for appellee's farm. On the other hand, it is the testimony of the appellant and other witnesses in his behalf that, with reasonable effort, the strip can be made a reasonably sufficient road. The fact that, during the long period which has intervened since this conveyance to the appellee, no use has been made of this strip as an outlet from the farm to the highway, though of itself not entitled to great weight, is, nevertheless, of some significance in support of plaintiff's claims. But the more obvious objection which we think the court may properly consider is the extreme narrowness of the strip for the use for which such a way is needed. A right of way 10 feet wide and 80 rods in length is, perhaps, a liberal width for a cattle way or for human pedestrians, but, for the ordinary needs of a farm on which teams and vehicles of various kinds and sizes are employed, and modern farm machinery in multiplied forms and enlarged dimensions is now in general use, a 10-foot roadway would seem to be obviously insufficient. On such a way it would hardly be possible for vehicles or machines to meet and pass without peril of collision, or without trespassing across its boundary lines. We are disposed also to hold that the testimony was such as to justify the trial court in finding the natural character of the way to be such as renders its reasonable improvement impracticable.

II. In avoidance of such conclusion, it is argued for appellant that Monson had offered to enlarge the width of the right of way to 16½ feet, or that he would convey to Lee enough to make the width 33 feet, on payment of the value of the land. But, assuming that the 10-foot strip is not such a right of way as will bar the appellee's right to condemn, we think it constitutes no defense to such condemnation for appellant to say that his land may not be taken for that purpose because appellee

might have purchased another way over the land of some third person.

III.   It is further said for the appellant that, if the 10-foot strip does not afford appellee a reasonably sufficient or convenient outlet from his farm, he became entitled, as a matter of law, to a way by necessity to the highway over the land of Moe now owned by Monson; and that, having such right, he should not be permitted to condemn a way over the land of the appellant.   Monson is not a party to this action, and if we should hold the condemnation proceeding void on the ground suggested, it would have no force or effect as against him.   The testimony shows, without dispute, that Monson has closed the way to the appellee.   Under such circumstances, this court said, in *Carter v. Barkley,* 137 Iowa 510, 514, that:

''The statute evidently does not contemplate that the owner who claims to have no way to his land shall be compelled, before inviting the aid of the statute, to try one or more lawsuits for the purpose of finding out whether he has a way or not.   The statute, in our judgment, should be construed to mean that, unless a party has a way, either public or private, which is unobstructed and unquestioned, he may institute proceedings under the statute.''

See, also, *Miller v. Kramer,* 148 Iowa 460, 469, where it is said, in substance, that the mere *right* to a way by necessity is not the equivalent of the existence of such way, and is, therefore, not a sufficient reason for denying condemnation.   This conclusion is in no respect a departure from our holding in *Strawberry Pt. Dist. Fair Soc. v. Ball,* 189 Iowa 605.   In that case, we found as a fact, not only that Ball already had a private right of way affording ingress and egress to and from the land in question, but that such lane was fairly and reasonably sufficient for that purpose, and had, in fact, been in practical and continuous use by Ball and his grantors for 11 years or more. These circumstances thus controlling the decision in that case are in marked contrast with those presented in the record now before us.

The case appears to have been fairly tried, and we discover no reason for interfering with the result arrived at by the trial court.   The decree appealed from is, therefore,—*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.